KRISTINA M. DIAZ (SBN 151566)
kristina.diaz@roll.com
COURTNEY E VAUDREUIL (SBN 223439)
Courtney.Vaudreuil@roll.com
KATE T. SPELMAN (SBN 269109)
Kate.Spelman@roll.com
ROLL LAW GROUP PC
11444 West Olympic Boulevard
Los Angeles, California 90064-1557
Telephone:    (310) 966-8400
Facsimile:    (310) 966-8810

THOMAS C. GOLDSTEIN (*pro hac vice application to be filed*)
tgoldstein@goldsteinrussell.com
GOLDSTEIN & RUSSELL, P.C.
7475 Wisconsin Avenue, Suite 850
Bethesda, Maryland 20814
Telephone:    (202) 362-0636
Facsimile:    (866) 574-2033

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WONDERFUL REAL ESTATE DEVELOPMENT LLC, a Delaware limited liability company,<br><br>             Plaintiff,<br><br>      vs.<br><br>THE LABORERS INTERNATIONAL UNION OF NORTH AMERICA LOCAL 220; SOUTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS; ALEXANDER B. CVITAN, an individual; JON P. PRECIADO, an individual; ERNESTO J. ORDONEZ, an individual; SERGIO RASCON, an individual; and DOES 1-10,<br><br>             Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>1. **VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1962(c)**<br>2. **UNFAIR COMPETITION, CAL. BUS. & PROF. CODE § 17200**<br>3. **ABUSE OF PROCESS**<br>4. **ATTEMPTED EXTORTION**<br><br>**DEMAND FOR JURY TRIAL** |

{2926171.3}

COMPLAINT

Plaintiff Wonderful Real Estate Development LLC ("Wonderful") alleges as follows:

## SUMMARY OF THE ACTION

1. Wonderful Real Estate Development LLC ("Wonderful") holds the development rights at an industrial park located in the City of Shafter. The first building at the site opened in 2003, and Wonderful has gradually added new facilities over the past 16 years. The park currently has 8 million square feet of buildings, occupied by 16 large retailers including Target, FedEx, and Ross Stores, among others. The park consists predominantly of distribution facilities, though there are future plans for ancillary office space. The park is bordered by the BNSF rail line to the west (for which it has on-site connectivity), the future High Speed Rail to the north, and farmland to the south and east. To date, the industrial park has created approximately 5,000 jobs in the City of Shafter.



(Aerial image of industrial park)

2.      The Laborers International Union of North America Local 220 and the Southern California District Council of Laborers (collectively, "LIUNA") is engaged in a pattern and practice of filing sham litigation and administrative challenges against real estate developers under the guise of the California Environmental Quality Act ("CEQA"), Cal. Pub. Res. Code § 21000, et seq., for the sole purpose of extorting commitments from developers, in the form of Project Labor Agreements ("PLAs"), to use exclusively LIUNA labor for their development projects. In other words, LIUNA is weaponizing the CEQA process for reasons wholly unrelated to the environment, and solely for its own financial gain.

3.      LIUNA and other unions' practice of challenging construction projects under the guise of CEQA is rampant and has become the status quo in Southern California on projects that are of substantial enough scale to attract union attention. In fact, this fraudulent, extortionist, and anti-competitive conduct is so prevalent that the industry has developed its own codeword to describe it: "greenmail." There is even a website (www.phonyuniontreehuggers.com) dedicated to tracking union opposition to countless public and private sector projects throughout California "on environmental grounds .... with the ulterior motive of extracting something of economic value from the public or private owner."

4.      Most developers buckle under the pressure and settle with LIUNA to avoid the delays and costs associated with sham CEQA litigation. As a condition of settlement, developers sign PLAs committing to the exclusive use of LIUNA labor. However, LIUNA is careful not to disclose these PLAs to the courts in order to avoid exposing its misuse of CEQA for its own blatant self-dealing.

5.      LIUNA's extortionist business model serves to exclude nonunion contractors and labor from the would-be competitive bidding process that is thwarted by LIUNA's exclusive PLAs, and results in disproportionally more developments in higher rent areas that can support the increased costs associated with LIUNA labor. Unfortunately, the ultimate losers are the lower income communities that see little in the way of quality, community-enhancing development and more blight from boarded-up and dilapidated abandoned sites.

6.      In the fall of 2018, LIUNA turned its sights on Wonderful. As part of the sale of a

cold storage building ("Lot 29A") to Wal-Mart Stores East, L.P. ("Wal-Mart"), Wonderful filed for a building permit with the City of Shafter. Around the same time, Wal-Mart put out a request for labor bids. Wonderful believes that this request placed the project in LIUNA's sights.

7. Around the same time it filed for the Lot 29A permit, Wonderful filed for another building permit for a distribution warehouse in the Shafter industrial park ("Lot 16 Distribution Facility"). Following the City of Shafter's approval of the building permits for Lot 29A and the Lot 16 Distribution Facility, LIUNA filed a CEQA challenge to both developments on November 20, 2018, in the Superior Court for the County of Kern.

8. LIUNA's petition asserts that the City of Shafter violated CEQA by treating the building permits as ministerial acts and issuing a Notice of Exemption, pursuant to Cal. Pub. Res. Code § 21000. LIUNA tried unsuccessfully to extort a labor agreement from Wal-Mart, but was unable to do so because Wal-Mart had already hired a contractor for Lot 29A. Accordingly, LIUNA abandoned its CEQA claim against Wal-Mart on January 9, 2019 by filing a request for dismissal.

9. As to Wonderful, LIUNA is seeking to hold the Lot 16 Distribution Facility hostage unless and until Wonderful agrees to enter into a PLA with LIUNA for all of Wonderful's future Shafter developments *for the next ten years*. At no point has LIUNA requested any environmental review or expressed any environmental concerns in conjunction with its demanded ransom.

10. Wonderful refuses to be intimidated by LIUNA's extortionist behavior, and brings this action to assert and defend its right to manage, control, and operate its business affairs free from LIUNA's conspiracy to control the sale of labor thorough its blatant use of sham litigation to achieve its goals.

11. Without intervention from this Court, LIUNA will stop at nothing to prevent the development of the Lot 16 Distribution Facility absent Wonderful's acquiescence to its demands. By engaging in the extortionist activities described in this Complaint, LIUNA has violated the Racketeer Influenced and Corrupt Organizations Act and the California unfair competition laws, and has engaged in abuse of process and attempted extortion.

# THE PARTIES

12. Plaintiff Wonderful Real Estate Development LLC, a Delaware limited liability company with its principle place of business in Los Angeles, is a real estate development company that develops a variety of industrial properties, including the Lot 16 Distribution Facility.

13. Defendant Southern California District Council of Laborers ("District Council") is a chartered district council of the Laborers' International Union of North America, and has 14 affiliated locals. The objective of the District Council is to "unify all of the economic and other forces of the affiliated Local Unions in its area, as a central representative body of such Local Unions." LIUNA Unif. Dist. Council Const. art. II, § 1. Among other powers, the District Council has the authority to "negotiate, bargain for and enter into understandings and agreements with employers, for and in behalf of its affiliated Local Unions." *Id.* § 2; *See Corns v. Laborers Int'l Union of N. Am.*, 709 F.3d 901, 904–05 (9th Cir. 2013).

14. Defendant Laborers International Union of North America Local 220 ("Local 220") is an affiliated local of the District Council. Local 220 transacts business in this jurisdiction with its principal place of business at 2201 H Street, Bakersfield, California 93301.

15. Defendant Alexander B. Cvitan serves as General Counsel for LIUNA.

16. Defendant Jon P. Preciado is the Business Manager for LIUNA's Southern California District Council.

17. Defendant Ernesto J. Ordonez is the Secretary-Treasurer for LIUNA's Southern California District Council.

18. Defendant Sergio Rascon is the President of LIUNA's Southern California District Council.

19. Wonderful is unaware of the true names or capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 10, inclusive, and therefore sue these Defendants by such fictitious names. Wonderful will seek leave of the Court to amend this pleading to set forth the true names and capacities of said Doe Defendants when the same are ascertained. Wonderful is informed and believes, and on that basis allege, that each of the fictitiously named Defendants is responsible in some manner for the occurrences

herein alleged, or was acting in concert with, and with the permission, approval, and authorization of, the specifically named Defendants.

**JURISDICTION AND VENUE**

20. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and § 1337 because the Complaint arises under the federal Racketeer Influenced and Corrupt Organizations statute ("RICO"), 18 U.S.C. § 1961 et seq.

21. This Court has jurisdiction over the state law causes of action pursuant to 28 U.S.C. § 1367 because those causes of action are related to the federal causes of action and form part of the same case and controversy under Article III of the United States Constitution.

22. The conduct alleged in this Complaint occurred in interstate commerce and has affected and will continue to substantially and directly affect interstate commerce.

23. The Court has personal jurisdiction over the Defendants and venue is proper in the Eastern District of California because Defendants conduct business in this District, and substantial parts of the events or omissions giving rise to the claims occurred in this District.

**FACTUAL ALLEGATIONS**

24. On October 5, 2018, Wonderful Nut Orchards LLC sold a parcel of land located at 2701 South Driver Road in Shafter, California, to Wal-Mart Stores East, L.P., so that Wal-Mart could build a cold storage facility ("Lot 29A Facility").

25. Prior to the sale, on or about October 4, 2018, the City of Shafter ("City") issued a building permit for the Lot 29A Facility. The permit was initially issued to Wonderful, but was modified post-sale to reflect Wal-Mart Store East, L.P. as the property owner.

26. On October 17, 2018, the City issued a Notice of Exemption ("NOE") for the Lot 29A Facility.

27. Also in October 2018, the City issued building permits to Wonderful for Wonderful's development of a one million square foot distribution warehouse located at 4500 Express Avenue in Shafter, California ("Lot 16 Distribution Facility").

28. On October 24, 2018, the City issued an NOE for the Lot 16 Distribution Facility.

29. LIUNA filed a lawsuit in the County of Kern Superior Court, claiming that the City

1 had failed to comply with CEQA prior to issuing building permits for the development of the Lot 16 and 29A Distribution Facilities ("CEQA Action"). *Laborers' International Union of North America Local Union No. 220 v. City of Shafter et al.*, No. BCV-18-102909 (Kern County Sup. Ct. filed Nov. 20, 2018).

30. While LIUNA filed the CEQA Action under the guise of an interest in environmental protection, LIUNA's claims are designed to obscure its true purpose – to extort long-term construction contracts for its membership from Wonderful.

31. Specifically, Defendants have expressed their willingness to dismiss the CEQA Action in exchange for a commitment (in the form of a PLA) by Wonderful to use LIUNA labor exclusively on its Shafter development projects for the next ten years. At no point have Defendants indicated that such a dismissal would require any concessions by Wonderful related to environmental review or protection.

32. LIUNA's scheme is further evidenced by its dismissal of its CEQA Action against Wal-Mart. LIUNA filed its original Petition on November 20, 2018 against Wonderful and Wal-Mart. Both entities' projects are in the same industrial park (owned by Wonderful), went through the same administrative process, and received identical NOEs within weeks of one another. The significant difference between Wonderful's distribution warehouse and Wal-Mart's cold-storage facility was that by the time LIUNA filed its CEQA Action, Wal-Mart had already retained a general contractor for its project, while Wonderful had not. Wal-Mart's agreement with its general contractor precluded it from being able to agree to use LIUNA labor. On January 8, 2019, seeing no gain to be had, LIUNA dismissed Wal-Mart with prejudice.

33. Upon information and belief, LIUNA is engaged in an ongoing pattern and practice of filing sham CEQA oppositions and appeals to delay development projects within Southern California for the sole purpose of coercing, intimidating, extorting, and pressuring developers to surrender to their demands.

34. Upon information and belief, LIUNA regularly scours the California state clearinghouse website to identify developers to target for CEQA challenges and litigation based on the size and scope of the construction projects, without regard to the merits of the CEQA claims.

35. Beginning in March 2017, for example, LIUNA and other unions began targeting the Icon Panorama Project, a mixed-use development proposed for the blighted former Montgomery Ward building in Panorama City. Despite overwhelming and vocal community support for the project, upon information and belief, LIUNA tried at every step of the administrative process to induce the relevant government agencies to deny approval of the Icon Project on the ground that it does not comply with CEQA.

36. Upon information and belief, LIUNA's sole purpose in filing CEQA challenges to the Icon Project was to delay the project and coerce, intimidate, and pressure Icon to agree to use exclusively union labor. In fact, LIUNA promised that it would withdraw its CEQA challenges and actively support the project if Icon agreed to use exclusively union labor, even if Icon took no steps whatsoever to address the purported environmental concerns raised in the challenges.

37. On October 1, 2018, following LIUNA's failure to stop the Icon Project at the administrative level, LIUNA filed a CEQA petition against Icon in Los Angeles Superior Court. On information and belief, LIUNA has only one goal – to force Icon to cede to its improper and anticompetitive demands by delaying the project further and driving up costs.

38. Like Wonderful, Icon has refused to be intimidated by LIUNA. On January 9, 2019, Icon filed a lawsuit against LIUNA and another labor organization alleging Sherman Act, RICO, and Unfair Competition claims based on LIUNA's extortionist behavior in filing sham CEQA challenges and litigation for the sole purpose of extracting a PLA designed to benefit its membership. *See The Icon at Panorama, LLC v. Southwest Regional Council of Carpenters, et al.*, No. 2:19-CV-00181 (C.D. Cal. filed Jan. 9, 2019). The allegations in that action provide further support for Wonderful's allegations in the instant lawsuit.

39. Other examples of LIUNA's coercive conduct abound. In July 2018, LIUNA filed a CEQA petition in San Diego Superior Court seeking to block construction of "Merge 56," a 72-acre mixed-use project in North San Diego County that has been lauded as a new model for suburban development. *See LIUNA Local Union 89 v. City of San Diego*, No. 37-2018-00035233-CU-WM-NC (San Diego Sup. Ct. filed July 13, 2018).

40. The Merge 56 developer reported that LIUNA requested a PLA in exchange for

dismissal of its CEQA lawsuit. *See* https://www.delmartimes.net/news/sd-cm-nc-merge-56-htmlstory.html. The developer has called for the state legislature to prohibit the disingenuous use of environmental law by labor unions who are simply seeking concessions from developers. *Id.*

41. On October 17, 2018, LIUNA filed a CEQA petition in Riverside Superior Court seeking to block Palo Verde Center LLC's ("PVC") development of a 2.5 million square foot cannabis cultivation center in the City of Blythe. *See Light, et al. v. City of Blythe, et al.*, No. RIC1821829 (Riverside Sup. Ct. filed Oct. 17, 2018).

42. PVC's CEO reported that "LIUNA requested that PVC sign a Laborers Project Labor Agreement as a condition to settle its environmental lawsuit" and that due to PVC's refusal to do so, "jobs for the people of Blythe and much needed tax revenues for the city of Blythe are being held hostage by LIUNA." *See* https://www.pvvt.com/blythe_news/labor-ceqa-suit-filed-vs-cannabis-project-palo-verde-center/article_2cb2f48e-fda6-11e8-8bcc-dfd2613659cb.html.

43. On November 30, 2018, after unsuccessfully attempting to derail the administrative review process, LIUNA filed a CEQA petition in Los Angeles Superior Court seeking to block construction of "520 Mateo," a mixed-use development approved for construction in the Downtown Los Angeles Arts District. *See LIUNA, Local 300 v. City of Los Angeles, et al.*, No. 18STCP03003 (Los Angeles Sup. Ct. filed Nov. 30, 2018).

44. On information and belief, LIUNA filed the CEQA action against 520 Mateo for the sole purpose of extracting a PLA for the benefit of its membership.

45. On January 31, 2019, LIUNA dismissed the 520 Mateo petition with prejudice, apparently without obtaining any concessions related to environmental review or protection. No PLA was disclosed as part of the dismissal.

46. The foregoing examples are merely the tip of the iceberg when it comes to LIUNA's ubiquitous attempts to use the CEQA process for its own self-dealing. This extortionist conduct cannot be allowed to continue unabated.

# FIRST CAUSE OF ACTION

## Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c)

### (Against the Individual Defendants)

47. Paragraphs 1 through 46 are re-alleged and reincorporated herein.

48. Wonderful is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

49. LIUNA constitutes an "enterprise" engaged in, and whose activities affect, interstate commerce within the meaning of 18 U.S.C. §§ 1961(4) and 1962 ("Enterprise"). The Enterprise exists separate and apart from the pattern of racketeering activity alleged and LIUNA itself.

50. Defendants Alexander B. Cvitan, Jon P. Preciado, Ernesto J. Ordonez, and Sergio Rascon (collectively, the "Individual Defendants") are each "persons" within the meaning of 18 U.S.C. §§ 1961(3), 1962(b), and 1962(d), who are employed by and/or associated with the Enterprise.

51. From at least April 2017 until the present, the "persons" identified in the preceding Paragraph conducted, participated in, engaged in, conspired to engage in, or aided and abetted the conduct of the affairs of the Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5), and 1962(c). The predicate acts constituting the pattern of unlawful activity engaged in by the "persons" identified in Paragraph 50 constitute extortion, as defined in 18 U.S.C. § 1961(1)(B) and 18 U.S.C. § 1951, including but not limited to:

   a. The sham litigation and related conduct described above beginning in November 2018 and continuing to the present, in which one or more of the "persons" identified in Paragraph 47 acted to stop and/or delay the Lot 16 Distribution Facility through unfounded CEQA litigation and extortionist settlement demands pursued for the sole purpose of obtaining a PLA between Wonderful and LIUNA. Wonderful's fear of economic loss from the extortion is reasonable. This extortion obstructed interstate commerce;

   b. Upon information and belief, one or more of the "persons" identified in Paragraph 50 engaged in additional acts of extortion beginning on or after November 2018. The information regarding each of those separate acts of extortion is within the custody and control of

LIUNA and/or its agents.

52. These acts all occurred after the effective date of RICO and more than two such acts occurred within ten years of one another.

53. All of the predicate acts described herein were continuous so as to form a pattern of racketeering activity in that the "persons" identified in Paragraph 50 engaged in the predicate acts over a substantial period of time and such predicate acts have become their regular way of conducting business, and these business practices will continue indefinitely into the future unless restrained by this Court. Specifically, the "persons" identified in Paragraph 50 knowingly violated the extortion statutes discussed in the preceding paragraphs in connection with their illegal schemes. Each of these acts constitutes a separate and distinct racketeering activity, as defined in 18 U.S.C. § 1961(a).

54. The "persons" identified in Paragraph 50 have engaged in numerous illegal acts in connection with their fraudulent schemes, as described in the preceding paragraphs. Those illegal acts constitute predicate acts of racketeering activity within the meaning of 18 U.S.C. § 1961(1) and were perpetrated for the same or similar purpose, and had similar results, participants, victims, and methods of communication.

55. As a direct and proximate result of, and by reason of the activities of the "persons" identified in Paragraph 50, and their conduct in violation of 18 U.S.C. § 1962(c), Wonderful has been injured in its business or property within the meaning of 18 U.S.C. § 1964(c). The above-described actions were taken, among other purposes described herein, with the specific intent and for the purpose of carrying out LIUNA's scheme and artifice to defraud and to conduct or participate in the affairs of the Enterprise. These acts are capable of repetition. Furthermore, the extortionate conduct aimed at Wonderful was done specifically to prevent construction of the Lot 16 Distribution Facility and any other project which would utilize nonunion labor.

56. As a result of these actions, Wonderful has been injured in its business or property, having suffered, among other things, threats to its projects, lost goodwill, costs of suit and attorneys' fees, and significant likely cost overruns due to delays in sale or lease of the Lot 16 Distribution Facility.

57. Wonderful is entitled to recover treble the damages it has sustained together with the cost of the suit, including reasonable attorneys' and experts' fees.

## SECOND CAUSE OF ACTION

## Unfair Competition, Cal. Bus. & Prof. Code § 17200

### (Against All Defendants)

58. Paragraphs 1 through 57 are re-alleged and reincorporated herein.

59. Wonderful brings this action on its own behalf as an entity that has suffered injury in fact and lost money or property as a result of Defendants' unfair competition within Kern County, California.

60. Defendants have engaged in unfair competition by committing acts that are unlawful and unfair business practices or acts, as defined by the California Business and Professions Code section 17200, et seq,. through, among other things, engaging in the acts described above, including but not limited to:

    a. Conduct that violates the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1960, et seq., including but not limited to the predicate acts described in Paragraphs 1 through 54 above; and

    b. Seeking to resolve the sham CEQA Litigation in exchange for a PLA.

61. The acts described in this Complaint constitute numerous unfair and/or unlawful acts or practices within the meaning of California Business and Professions Code section 17200, et seq. Through their conduct, Defendants are attempting to control the sale of labor services to construction contractors and project developers, including but not limited to Wonderful, which drives up the costs of development. This conduct also serves to exclude nonunion contractors and labor from the would-be competitive bidding process that is thwarted by LIUNA's exclusive PLAs.

62. Defendants actively and directly participated in or provided substantial assistance to others who committed the unfair, unlawful and/or fraudulent acts or practices described herein.

63. The gravity of the harm of Defendants' conduct on Wonderful, as well as on nonunion contractors and labor, outweighs any potential benefits of such conduct. Defendants'

conduct described herein offends established public policies, is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

64. Defendants' unfair and unlawful business practices are likely to continue to harm Wonderful, nonunion contractors and labor, and consumers, and present a continuing threat to the public.

65. As a result of these actions, Wonderful has been and will be injured in its business or property, having suffered, among other things, lost goodwill, costs of suit and attorneys' fees, and significant cost impacts and overruns due to delays in the leasing or selling of the Lot 16 Distribution Facility. Wonderful is entitled to recover restitutionary disgorgement of profits and other economic benefits unjustly obtained by Defendants from Wonderful as a result of Defendants' acts of unfair competition, along with its attorneys' fees.

66. Wonderful has suffered, and will continue to suffer, irreparable harm, entitling Wonderful to injunctive relief, if Defendants are not enjoined from engaging in unfair competition.

### THIRD CAUSE OF ACTION

**Abuse of Process**

**(Against All Defendants)**

67. Paragraphs 1 through 66 are re-alleged and reincorporated herein.

68. Defendants maintained and attempted to settle the CEQA Litigation for the sole purpose of extorting a PLA granting LIUNA exclusive rights to all future Wonderful real estate developments in Shafter, California for the next ten years, and not for any environmental benefit.

69. As a direct result of Defendants' wrongful conduct, Wonderful has suffered and will suffer substantial injury to its property and/or business, including but not limited to, threats to its projects, lost goodwill, costs of suit and attorneys' fees, and significant likely cost overruns due to delays in the sale or lease of the Lot 16 Distribution Facility.

70. Wonderful has suffered, and will continue to suffer, irreparable harm, entitling Wonderful to injunctive relief, if Defendants are not enjoined from the unlawful acts described above.

## FOURTH CAUSE OF ACTION

### Attempted Extortion

### (Against All Defendants)

71. Paragraphs 1 through 70 are re-alleged and reincorporated herein.

72. Defendants intended by their actions to commit extortion, by using the sham CEQA Litigation to induce Wonderful into signing a PLA granting LIUNA exclusive rights to all future Wonderful real estate developments in Shafter, California for the next ten years.

73. Defendants have engaged in multiple acts in furtherance of their attempt to extort Wonderful, including filing the sham CEQA Litigation and engaging in numerous discussions with Wonderful's counsel designed to extort a PLA in exchange for dismissal of the CEQA Litigation.

74. Although Defendants have been unsuccessful in their efforts thus far, Wonderful has suffered and will suffer substantial injury to its property and/or business, including but not limited to, threats to its projects, lost goodwill, costs of suit and attorneys' fees, and significant likely cost overruns due to delays in the sale or lease of the Lot 16 Distribution Facility.

75. Defendants' misconduct is intentional and malicious to such a degree that Wonderful is entitled to punitive or exemplary damages.

76. Wonderful has suffered, and will continue to suffer, irreparable harm, entitling Wonderful to injunctive relief, if Defendants are not enjoined from the unlawful acts described above.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests judgment against Defendants, and each of them, for the following:

**ON THE FIRST CAUSE OF ACTION:**

  a. Damages against the Individual Defendants, jointly and severally, for a sum of money equal to the amount of damages Wonderful has sustained or will sustain, said amount to be trebled pursuant to 18 U.S.C. § 1964(c);

  b. Prejudgment interest;

    c. Costs of suit incurred, including all costs, expenses, attorneys' and experts' fees, pursuant to 18 U.S.C. § 1964(c);

    d. Punitive damages; and

    e. Any other and further relief as the Court deems just and equitable.

**ON THE SECOND CAUSE OF ACTION:**

    a. A permanent injunction pursuant to California Business and Professions Code §17203, barring LIUNA from obtaining PLAs or other similar labor agreements in exchange for withdrawing environmental challenges, or threatened environmental challenges, it seeks to bring against development projects under CEQA;

    b. A preliminary injunction pursuant to California Business and Professions Code §17203 to enjoin and restrain Defendants from the acts of unfair competition set forth above;

    c. Restoration of all funds acquired by the acts of unfair competition set forth above pursuant to Business and Professions Code §17203;

    d. Costs of suit incurred, including all costs, expenses, attorneys' and experts' fees, pursuant to California Code of Civil Procedure §1021.5.

    e. Any other and further relief as the court deems just and equitable.

**ON THE THIRD AND FOURTH CAUSES OF ACTION:**

    a. A permanent injunction barring LIUNA from obtaining PLAs or other similar labor agreements in exchange for withdrawing environmental challenges, or threatened environmental challenges, it seeks to bring against development projects under CEQA;

    b. Damages against Defendants, jointly and severally, for a sum of money equal to the amount of damages that Wonderful has sustained or will sustain;

    c. Prejudgment interest;

    d. Costs of suit incurred, including all costs, expenses, attorneys' and experts' fees;

    e. Punitive damages; and

    f. Any other and further relief as the Court deems just and equitable.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED: March 29, 2019                    ROLL LAW GROUP PC

                              By:      */s/ Kristina M. Diaz*
                                    Kristina M. Diaz
                                    Attorneys for Plaintiff