# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **WONDERFUL REAL ESTATE DEVELOPMENT LLC,** | 1:19-cv-00416-LJO-SKO |
| **Plaintiff,** | **ORDER GRANTING DEFENDANT LOCAL 220'S MOTION TO DISMISS IN PART AND GRANTING LEAVE TO AMEND** |
| v. | |
| **LABORERS INTERNATIONAL UNION OF NORTH AMERICA LOCAL 220; SOUTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS; ALEXANDER B. CVITAN; JON P. PRECIADO; ERNESTO J. ORDONEZ; SERGIO RASCON,** | (ECF Nos. 25, 27, 29) |
| **Defendants.** | |

## I. INTRODUCTION

Plaintiff Wonderful Real Estate Development LLC ("Wonderful" or "Plaintiff") brings this action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, and also brings state law claims for violation of California's Unfair Competition law, Cal. Bus. & Prof. Code § 17200, and attempted extortion. Wonderful sues the Laborers International Union of North America Local 220 ("Local 220"); Southern California District Council of Laborers ("So. Cal. District Council"); Jon P. Preciado; Ernesto J. Ordonez; Sergio Rascon; and Alexander B. Cvitan ("Individual Defendants") (collectively "Defendants").

On July 8, 2019, Plaintiff filed a first amended complaint ("FAC") in response to Defendants' motions to dismiss. ECF No. 21. Subject matter jurisdiction is alleged pursuant to 28 U.S.C. §§ 1331,

1

1337 and 1367. Local 220, So. Cal. District Council, and the Individual Defendants each filed separate motions to dismiss pursuant to the Federal Rules of Civil Procedure raising different arguments for dismissal of the five causes of action contained in the FAC. ECF Nos. 25, 27, 29. Plaintiff opposed, ECF Nos. 33, 34, 35, and Defendants replied. ECF Nos. 38, 39, 40. The matter was taken under submission on the papers pursuant to Local Rule 230(g). After the motions to dismiss were taken off calendar, Defendants filed a special motion to strike the two state law claims pursuant to California's anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16, and Federal Rule of Civil Procedure 12(f). ECF Nos. 44-45. Plaintiff opposed, ECF No. 47, and Defendants replied. ECF No. 49. For reasons set forth below, Defendant Local 220's motion to dismiss, ECF No. 25, is granted in part and the other motions are denied.

## II. **FACTUAL BACKGROUND**[1]

Wonderful is a real estate development company that develops a variety of industrial properties. FAC ¶ 14. Defendant So. Cal. District Council is one of forty-four chartered district councils of the Laborers' International Union of North America ("LIUNA"). So. Cal. District Council has 14 affiliated local chapters, including Local 220. *Id.* ¶ 15. "The objective of the [So. Cal.] District Council is to 'unify all of the economic and other forces of the affiliated Local Unions in its area, as a central representative body of such Local Unions[,]'" and the Council has the authority to negotiate for and enter into agreements with employers on behalf of its affiliated local unions. *Id.* (quoting LIUNA District Council's constitution). *Id.* Local 220 is an affiliated local union of the So. Cal. District Council with its principal place of business in Bakersfield, California. *Id.* ¶ 16. Defendant Jon Preciado is the Business Manager for So. Cal. District Council. *Id.* ¶ 18. Defendant Ernesto Ordonez is So Cal. District Council's Secretary-Treasurer. *Id.* ¶ 19. Defendant Sergio Rascon is the Business Manager of Local 300, President

---

[1] The following facts are drawn from Plaintiff's FAC in this matter and are accepted as true only for the purpose of these motions to dismiss. *See OSU Student All. v. Ray*, 699 F.3d 1053, 1058 (9th Cir. 2012).

2

of So. Cal. District Council, and Vice President of LIUNA. *Id.* ¶ 20. Defendant Alexander Cvitan serves as General Counsel for LIUNA. *Id.* ¶ 17

Wonderful alleges that Local 220, So. Cal. District Council, together with the Individual Defendants, are part of an association-in-fact enterprise that, along with the So. Cal. District Council's other affiliated local unions, comprise the "Union Enterprise." *Id.* ¶ 2. The Union Enterprise is alleged to be engaged in a continuing pattern and practice of filing sham litigation and administrative challenges against real estate developers under the California Environmental Quality Act ("CEQA"), Cal. Pub. Res. Code § 21000, *et seq*. It is alleged that the sole purpose of the CEQA challenges is extorting developers for Project Labor Agreements ("PLAs") to force them to use exclusively Union Enterprise labor for development projects. *Id.* at ¶2. The So. Cal. District Council and its local chapters, which are operating under its direction and control, are filing sham CEQA actions against real estate developers for the purpose of extracting PLAs for the financial gain of its union and union members rather than for environmental reasons. *Id.* ¶ 2. According to Wonderful:

> The Union Enterprise's practice of challenging construction projects under the guise of CEQA is rampant and has become the status quo in Southern California on projects that are of substantial enough scale to attract union attention. In fact, this fraudulent, extortionist, and anti-competitive conduct is so prevalent that the industry has developed its own codeword to describe it: "greenmail." There is even a website (www.phonyuniontreehuggers.com) dedicated to tracking union opposition to countless public and private sector projects throughout California "on environmental grounds .... with the ulterior motive of extracting something of economic value from the public or private owner."

*Id.* ¶ 3. Most developers buckle under the pressure and settle with the Union Enterprise to avoid the delays and costs associated with sham CEQA litigation. *Id.* ¶ 4. As a condition of settlement of the CEQA action, developers sign PLAs committing to the exclusive use of Union Enterprise labor. *Id.* This extortionist business model serves to exclude nonunion contractors and labor from a would-be competitive bidding process. *Id.* ¶ 5.

Wonderful has the development rights for an industrial park in the City of Shafter. *Id.* ¶ 1. The park has 8 million square feet of buildings, consisting predominantly of distribution facilities but also

3

including 16 large retailers. *Id.* To date the industrial park has created approximately 5,000 jobs in the City of Shafter. *Id.* There are future plans for further development. *Id.* In October 2018, Wonderful Nut Orchard LLC sold a parcel of land in Shafter, Lot 29A, to Wal-Mart Stores East, L.P. so Wal-Mart could build a cold storage facility. *Id.*¶ 26. The City of Shafter issued a project approval and a notice of exemption for Lot 29A in October 2018. *Id.* ¶¶ 27-28. Also in October 2018, the City of Shafter issued a project approval and a notice of exemption to Wonderful for Wonderful's development of a one million square foot distribution warehouse located at 4500 Express Avenue in Shafter, California ("Lot 16 Distribution Facility"). *Id.* ¶¶29-30.

In November 2018, following the City of Shafter's project approvals for Lot 29A and the Lot 16 Distribution Facility, the Union Enterprise filed a CEQA challenge to both development projects in the Superior Court for the County of Kern. *Id.* ¶ 8. The CEQA petition asserts that the City of Shafter violated CEQA by treating the project approvals as ministerial acts and issuing notices of exemption without subjecting them to environmental reviews. *Id.* ¶ 9-10. The Union Enterprise abandoned its CEQA claim against Wal-Mart in January 2019 by filing a request for dismissal allegedly after learning that Wal-Mart had already hired a contractor for Lot 29A thus preventing Local 220 from extracting a PLA from Wal-Mart for Lot 29A. *Id.* "As to Wonderful, the Union Enterprise is seeking to hold the Lot 16 Distribution Facility hostage unless and until Wonderful agrees to enter into a PLA with [the Union] for all of Wonderful's future Shafter developments *for the next ten years*. At no point has LIUNA requested any environmental review or expressed any environmental concerns in conjunction with its demanded ransom. For the Lot 16 Distribution Facility alone, Wonderful would have incurred over $2 million in additional costs if it were forced to use LIUNA labor." *Id.* ¶ 10 (emphasis in original). The CEQA case concerning the Lot 16 Distribution Facility has not yet been adjudicated. *Id.* ¶ 11.

Wonderful alleges that upon information and belief, the Union Enterprise is engaged in an ongoing pattern and practice of filing sham CEQA oppositions without regard to the merits of the action with the sole purpose of coercing, intimidating, extorting, and pressuring developers to award them

4

labor agreements. *Id.* ¶ 35. The Union Enterprise allegedly filed a CEQA action in Los Angeles Superior Court challenging the Icon Panorama Project in Panorama City after attempting to induce relevant governmental agencies to deny approval for the Project for not complying with CEQA. *Id.* ¶ 37-39.[2] This Icon CEQA Action also allegedly was brought without regard for the merits or environmental concerns but for the alternate goal of forcing Icon to use exclusively union labor for the project. *Id.*

The FAC alleges other examples of the Union Enterprise's "extortionate conduct" including a CEQA challenge to a 2.89 million square foot development park, *Laborers International Union of North America, Local 1184 v. City of Beaumont et al.,* Riverside Sup. Ct. Case No. RIC1616400, which was allegedly dismissed within months of filing after obtaining a labor agreement from the developer. *Id.* ¶¶ 11, 41. In July 2018, the Union Enterprise filed a CEQA action seeking to block construction of "Merge 56," a 72-acre mixed use project in San Diego County, *LIUNA Local Union 89 v. City of San Diego*, No. 37-2018-00035233-CU-WM-NC (San Diego Super. Ct. filed July 13, 2018). *Id.* ¶42. The Merge 56 developers reported that the Union Enterprise requested a PLA in exchange for dismissal of its CEQA lawsuit and called for the state legislature to prohibit disingenuous use of environmental laws. *Id.* ¶43 (citing https://www.delmartimes.net/news/sd-cm-nc-merge-56-htmlstory.html). In October 2018, the Union Enterprise filed a CEQA petition seeking to block Palo Verde Center LLC's development of a 2.5 million square foot cannabis cultivation center in the City of Blythe, *Light, et al. v. City of Blythe, et al.*, No. RIC1821829 (Riverside Super. Ct. filed Oct. 17, 2018), and the developer's CEO reported that LIUNA requested a PLA as a condition to settle its environmental lawsuit. *Id.* ¶¶ 44-45 (citing https://www.pvvt.com/blythe_news/labor-ceqa-suit-filed-vs-cannabis-project-palo-verde-center/article_2cb2f48e-fda6-11e8-8bcc-dfd2613659cb.html). Lastly, in November 2018, the Union Enterprise filed a CEQA action in Los Angeles Superior Court to block construction of "520 Mateo," a

---

[2] The Icon developers have filed a similar lawsuit to the one here in the Central District alleging Sherman Act, RICO, and unfair competition claims for the filing of the alleged sham CEQA action. *Id.* ¶40 (citing *The Icon at Panorama, LLC v. Southwest Regional Council of Carpenters, et al.*, No. 2:19-CV-00181 (C.D. Cal. filed Jan. 9, 2019)).

mixed use development in Downtown Los Angeles, *LIUNA, Local 300 v. City of Los Angeles, et al.*, No. 18STCP03003 (Los Angeles Super. Ct. filed Nov. 30, 2018). *Id.* ¶ 46. The 520 San Mateo CEQA action was for the sole purpose of extracting a PLA for its union members but was dismissed in January 2019 without obtaining any concession related to environmental review. *Id.* ¶¶ 47-48. No PLA was disclosed as part of the dismissal. *Id.* ¶ 48. Wonderful alleges that these examples are "merely the tip of the iceberg when it comes to the Union Enterprise's ubiquitous attempts to use the CEQA process for its own self-dealing." *Id.* ¶ 49. In sum, Wonderful alleges six CEQA actions, including the City of Shafter CEQA challenge, that were filed by the Union Enterprise for an allegedly extortionary purpose.

By engaging in the extortionist activities described, Local 220, So. Cal. District Council and the Individual Defendants are alleged to have violated RICO, the California unfair competition laws, and have engaged in attempted extortion. *Id.* ¶ 13 As to the individual Defendants, the FAC alleges that they had some level of involvement with the filings of CEQA challenges to extort PLAs. *See id.* ¶¶ 17-20. Defendant Cvitan, LIUNA's General Counsel, formed a non-profit organization, Support Alliance for Environmental Responsibility ("SAFER"), in January 2019 to challenge development projects under CEQA in order to secure PLAs for LIUNA. *Id.* ¶17. SAFER shares the same address and suite number as the So. Cal. District Council. *Id.* Defendant Cvitan communicated with Wal-Mart and Wonderful regarding the Shafter CEQA challenges and offered to dismiss the litigation in exchange for long term PLAs between Wonderful and LIUNA. *Id.* Defendant Preciado also was involved in forming SAFER for the purpose of challenging development projects under CEQA in order to secure PLAs for LIUNA. *Id.* ¶ 18. Defendant Ordonez and Defendant Rascon are "aware of, participate[] in, and ratif[y] the Union Enterprise's use of meritless CEQA challenges to development projects and negotiation of PLAs in settlement of such challenges." *Id.* ¶¶ 19-20. "The number of times that [Ordonez and Rascon] ha[ve] been involved in the Union Enterprise to extort labor agreements from developers is unknown, but far exceeds two times." *Id.*

Wonderful's FAC states five causes of action for: 1) violation of the RICO, 18 U.S.C. § 1962(c);

2) violation of RICO, 18 U.S.C. § 1962(d), by conspiring to violate 18 U.S.C. § 1962(c); 3) violation of RICO, 18 U.S.C. § 1962(d), by conspiring to violate 18 U.S.C. § 1962(b); 4) violation of California's Unfair Competition law ("UCL"), Cal. Bus. & Prof. Code §17200; and 5) attempted extortion.

### III. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether a complaint states a claim upon which relief may be granted, the Court accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. In other words, the complaint must describe the alleged misconduct in enough detail to lay the foundation for an identified legal claim.

"Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). To the extent that the pleadings can be cured by the allegation of additional facts, the Court will afford the plaintiff leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## IV. DISCUSSION

The Defendants in this case have brought three separate motions to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6),[3] and a special motion to strike under California's anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16(e)(1), (2), and (4). Specifically, Local 220, So. Cal. District Council, and the Individual Defendants each brought a motion to dismiss positing different arguments in each motion but joining in the others as well. *See* ECF No. 25, 27, 29. After the motions to dismiss became ripe, the Defendants then filed a special motion to strike the two state law claims under California's UCL and for attempted extortion. ECF Nos. 44-45. Local 220 submits that only if the Court determines that Plaintiff has overcome the defenses in Local 220's motion to dismiss should it turn to

---

[3] Defendants bring their motions both under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), indicating that there is a split in authorities as to whether the National Labor Relations Act ("NLRA") preemption is more appropriately asserted under 12(b)(1) or 12(b)(6). ECF No. 25-1 at 11, n.3 (citing *Butcher v. Teamsters Local 955*, No. 18-CV-02424-JARKGG, 2018 U.S. Dist. LEXIS 200876, at *4-5 (D. Kan. 2018)). The Court does not reach the NRLA preemption argument and thus does not address the appropriateness of the motion under Rule 12(b)(1).

the substance of the Plaintiff's causes of action on their merits which are addressed in the two other motions to dismiss. ECF No. 25-1 at 12.[4] The special motion to strike's substantive arguments concerning the merits of the claims parallel the arguments made in Local 220's motion to dismiss with regard to the state law claims. ECF No. 45 at 14-19, Accordingly, the Court first addresses Local 220's motion to dismiss.

### A. Local 220's Motion to Dismiss

Local 220 moves to dismiss the FAC arguing (1) all claims must be dismissed under the *Noerr-Pennington* doctrine because Local 220's underlying CEQA petition is not a sham; (2) the state law claims are barred by the California litigation privilege, Cal. Civ. Code § 47(b); (3) the state law claims are preempted by the NLRA; and (4) the Court lacks subject matter jurisdiction to consider injunctive relief. ECF No. 25.

Local 220 submits that because the petitioning conduct at the heart of this dispute is insulated from liability by the First Amendment under the *Noerr-Pennington* doctrine, all the claims must be dismissed. ECF No. 25-1 at 11, 15-29. As a related argument, Local 220 submits that because the underlying conduct is not a sham, all of Plaintiff's claims fail on the merits. ECF No. 25-1 at 11. Local 220 submits that "[n]ot only does Plaintiff's contention that the CEQA Petition is a sham fail on the grounds that the legal question raised by that petition is non-frivolous, it also fails because Plaintiff cannot accurately characterize Local 220's CEQA Petition as part of an 'ongoing pattern and practice of filing sham CEQA oppositions' throughout Southern California." *Id.* at 13. Defendants submitted the City of Shafter CEQA petition as part of their request for judicial notice filed along with their motion. ECF No. 32.[5] However, the Court will not engage in an extensive review of that petition at this stage since Plaintiff's FAC does not allege sufficient facts as to the objective merits of the alleged sham

---

[4] Pin cites refer to the ECF-generated pagination in the upper right-hand corner of the document header.
[5] Local 220 submitted hundreds of pages of exhibits along with their motion to dismiss as part of a request for judicial notice. *See* ECF No. 32. The Court will not spend time to review these documents as many are not appropriate or necessary to consider on the limited question the Court addresses here.

9

litigation. Because Plaintiff has not alleged sufficient facts to overcome *Noerr-Pennington* immunity and relatedly the Court is unable to determine on the facts alleged if the sham litigation exception applies, the Court declines to reach the remaining arguments in Local 220's motion or the other motions to dismiss. For the reasons set forth herein the Court finds that the *Noerr-Pennington* doctrine bars Plaintiff's claims as currently pled but grants Plaintiff leave to amend.

### 1. *Noerr-Pennington Doctrine*[6]

The *Noerr-Pennington* doctrine derives from the First Amendment's guarantee of "the right of the people ... to petition the Government for a redress of grievances." U.S. Const. amend. I. "Under the *Noerr-Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006); *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993) (Under the *Noerr-Pennington* doctrine, "[t]hose who petition government for redress are generally immune from antitrust liability."). It first arose in the antitrust context, and reflected an effort to reconcile the Sherman Act with the First Amendment's Petition Clause. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006).

The doctrine was subsequently extended to bar other causes of action brought against a protected petitioner, including RICO actions. *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 648 (9th Cir. 2009). "Recognizing that the right to petition extends to all departments of the government and includes access to courts, the Supreme Court extended the doctrine to provide immunity for the use of the channels and procedures of state and federal courts to advocate causes." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 644 (9th Cir. 2009) (internal quotation marks and citation omitted). The doctrine encompasses and protects petitioning activity including "communication[s] to the court," such as "[a]

---

[6] *See Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965).

10

complaint, and answer, a counterclaim, and other assorted documents and pleadings, in which plaintiffs or defendants make representations and present arguments to support their request that the court do or not do something" as well as "conduct incident to the suit." *Sosa*, 437 F.3d at 933-35. The Ninth Circuit has also recognized that the *Noerr-Pennington* doctrine protects settlement conduct incidental to the prosecution of the suit. *Id.* at 934–35.[7]

"Not all petitioning activity is immunized, however. A 'sham' exception to the doctrine developed to prevent the immunization of conduct that used 'governmental process ... as an anticompetitive weapon.'" *Kearney*, 590 F.3d at 644 (quoting *Kottle v. Nw. Kidney Ctrs.,* 146 F.3d 1056, 1060 (9th Cir. 1998)). In *Sosa*, the court held that the doctrine does not protect petitioning conduct that, although "ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." 437 F.3d at 938. The court further indicated that the doctrine "is not limited to the antitrust context, but applies equally in all contexts." *Id.* (internal quotation marks and citations omitted).

In *Kearney*, 590 F.3d at 648, the court clarified that the sham exception also applies to RICO claims. In *Kearney*, a landowner brought a RICO suit against a law firm that represented a school district in eminent domain proceedings, alleging that the firm suppressed results of percolation testing on the land at issue in an effort to affect its valuation. The court rejected defendant's argument that *Noerr-Pennington* barred suit based on defendant's petitioning conduct in the prior litigation. Rather, the court noted that the law firm's conduct consisted of "making intentional misrepresentations to the court" thereby "depriv[ing] the litigation of its legitimacy." *Id.* at 646. The court therefore applied the "sham litigation" exception, concluding that "[d]efendants' alleged misconduct here was precisely the sort the

---

[7] The *Noerr-Pennington* doctrine applies to both the federal and state claims in this suit. *Fitbit, Inc. v. Laguna 2, LLC*, No. 17-CV-00079-EMC, 2018 WL 306724, at *2 (N.D. Cal. Jan. 5, 2018), *reconsideration denied*, No. 17-CV-00079-EMC, 2018 WL 620121 (N.D. Cal. Jan. 30, 2018) ("The *Noerr-Pennington* doctrine applies to both the state claims and the federal claim"); *Monolithic Power Systems, Inc. v. 02 Micro Intern. Ltd.*, Nos. C 04-2000 CW, C 06-2929 CW, 2007 WL 801886, *4 (N.D. Cal. Mar. 14, 2007) ("While the *Noerr-Pennington* doctrine was formulated in the context of antitrust cases, it has been extended to cases involving other types of civil liability, including state law claims of unfair competition").

11

sham exception was created to address." *Id.*

Plaintiff's allegations that the sham litigation exception applies are subject to a heightened pleading standard. *See Kottle*, 146 F.3d at 1063 ("when a plaintiff seeks damages . . . for conduct which is prima facie protected by the First Amendment, the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required. In such cases, we employ a heightened pleading standard") (internal citations and quotation marks omitted). A complaint must "contain specific allegations demonstrating that the *Noerr-Pennington* protections do not apply." *Boone v. Redevelopment Agency of City of San Jose*, 841 F.2d 886, 894 (9th Cir. 1988); *Franchise Realty Interstate Corp. v. San Francisco Local Joint Exec. Bd. of Culinary Workers*, 542 F.2d 1076, 1082 (9th Cir. 1976) (holding that a party invoking an exception to *Noerr-Pennington* immunity "must include specific allegations of the specific activities" which bring the opposing party outside the doctrine's protective umbrella).[8] At the same time, "courts rarely award *Noerr-Pennington* immunity at the motion to dismiss stage, where the Court must accept as true the non-moving party's well-pleaded allegations with respect to sham litigation." *In re Outlaw Lab., LP Litig.*, No. 3:18-CV-1820-GPC-BGS, 2019 WL 1205004, at *5 (S.D. Cal. Mar. 14, 2019) (internal quotation marks and citation omitted).

In the context of litigation, the Ninth Circuit has identified three types of situations in which the sham exception to *Noerr-Pennington* immunity may apply: (1) "where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful"; (2) "where the conduct involves a series of lawsuits 'brought pursuant to a policy of starting legal proceedings without regard to the merits' and for an unlawful purpose"; and (3) "if the allegedly unlawful conduct 'consists of making intentional misrepresentations to the court, litigation can be deemed a sham if 'a party's knowing fraud upon, or its

---

[8] At least one court has equated this heightened standard with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure. *See Meridian Project Sys., Inc. v. Hardin Constr. Co., LLC*, 404 F. Supp. 2d 1214, 1221 (E.D. Cal. 2005) (noting that allegations that a complaint was objectively baseless "implicate[d] both Rule 9(b) and *Noerr-Pennington's* heightened pleading standard").

12

intentional misrepresentations to, the court deprive the litigation of its legitimacy.'" *Sosa*, 437 F.3d at 938 (citations omitted); *see also Kottle*, 146 F.3d at 1060 ("When the branch of government involved is a court of law, this circuit recognizes three circumstances in which [a defendant's] activities might fall into the sham exception.").

### 2. *Application of Noerr-Pennington Doctrine and Sham Exception to FAC*

As an initial matter it seems there is no question that the Defendants' conduct in filing CEQA writs falls within the *Noerr-Pennington* doctrine's protective umbrella for petitioning activity that is immune from liability. The parties dispute whether Plaintiff has alleged enough to bring the conduct within one of the sham exceptions to the doctrine. Wonderful asserts that under either of the first two situations it has pled sufficient facts to show that the sham litigation exception to the *Noerr-Pennington* doctrine applies and correspondingly that Defendants are not entitled to immunity under the doctrine. ECF No. 35 at 8.

#### a. *Whether Lawsuit(s) Are Objectively Baseless*

Under the first formulation, there is a two-part test for whether something meets the definition of "sham" litigation: (1) "the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits[;]" and (2) "whether the baseless lawsuit conceals 'an attempt to interfere *directly* with the business relationships of a competitor.'" *Prof'l Real Estate Inv'rs, Inc.*, 508 U.S. at 60–61 (quoting *Noerr*, 365 U.S. at 144). "Only if challenged litigation is objectively meritless [under the first prong] may a court examine the litigant's subjective motivation," under the second prong of the test. *Id.* at 60. Contrary to the arguments in Wonderful's opposition, it has not alleged sufficient details about any purported defects in Local 220's underlying CEQA petition for the Court to be able to make a reasonable inference that the CEQA petition was "objectively baseless." Under that prong, "sham litigation must constitute the pursuit of claims so baseless that no reasonable litigant could realistically expect to secure favorable relief" and "[t]he existence of probable cause to institute legal proceedings precludes a finding that [a defendant] has

13

engaged in sham litigation." *Id.* at 62. The FAC only makes conclusory statements that the underlying CEQA petitions were "baseless." *See, e.g.*, FAC ¶¶ 54(b), 58, 69(b), 74, 88(b). While Wonderful alleged that Local 220 filed its CEQA action for the propose of securing a PLA – and even assuming that this is sufficient to plead that Defendants' subjective motive in bringing the suit was unlawful – this does not speak to first prong of the test of whether the CEQA action was objectively baseless. Wonderful has not pled facts that "disprove the challenged lawsuit[s'] legal viability." *Prof'l Real Estate Inv'rs, Inc.*, 508 U.S. at 61. Thus, Wonderful has not pled enough facts to show that the first situation of the sham litigation exception is applicable.

Wonderful's opposition includes facts that are not in the FAC, but were argued in a demurrer in the City of Shafter CEQA action as to the merit of the case. ECF No. 35 at 10. Since these facts are not alleged in the FAC, the Court will not consider whether these additional facts are sufficient to allege an "objectively meritless" suit. Wonderful requests leave to amend to allege facts concerning objective baselessness. ECF No. 35 at 11. The Court will grant Wonderful leave to allege additional facts in this regard.[9]

      b.  *Whether Conduct Involves A Series of Lawsuits Brought Pursuant to Policy*

Under the second situation for application of the sham litigation exception to *Noerr-Pennington* immunity, – i.e. "where the conduct involves a series of lawsuits 'brought pursuant to a policy of starting legal proceedings without regard to the merits' and for an unlawful purpose," *Sosa*, 437 F.3d at 938 (citations omitted) – Local 220 argues that Wonderful has not established a "series of lawsuits" because

---

[9] After the motions to dismiss and motion to strike were ripe, Wonderful filed a notice of supplemental authority in opposition to the pending motions. ECF No. 53. The filing contains an exhibit of a recent decision in the underlying state CEQA action, *Laborers' International Union of North America Local Union No. 220, et al. v. City of Shafter, et al.*, Kern County Superior Court Case No. BCV-18-102909, which granted Wonderful's demurrer to the second amended petition for peremptory writ. *Id.* at 2. Wonderful submits that "[t]his ruling relates to the allegations at the heart of Plaintiff's claims in this case regarding Defendants' conduct in filing sham litigation." *Id.* However, the attached ruling consists of one sentence sustaining the demurrer for failing to state facts sufficient to constitute a cause of action but granting leave to amend. *Id.* at 4. There is no other substantive information provided in the ruling. Defendants objected. ECF No. 55. The Court does not find the information in the supplemental authority to be particularly helpful. Since leave to amend is being granted, Plaintiff is free to allege these additional facts in the amended complaint.

Local 220 has only filed one CEQA challenge, not a series, and that the other five references in the FAC to CEQA challenges were filed by other labor unions and that those filings actually reflect litigation success. ECF No. 25-1 at 21. This version of the sham exception derives from *California Motor Transp. Co. v. Trucking Unlimited*. 404 U.S. 508, 513 (1972) ("a pattern of baseless, repetitive claims may emerge which leads the factfinder to conclude that the administrative and judicial processes have been abused."). The Ninth Circuit has discussed the rationale behind *California Motor Transport*:

> Litigation is invariably costly, distracting and time-consuming; having to defend a whole series of such proceedings can inflict a crushing burden on a business. *California Motor Transport* thus recognized that the filing of a whole series of lawsuits and other legal actions without regard to the merits has far more serious implications than filing a single action, and can serve as a very effective restraint on trade. When dealing with a series of lawsuits, the question is not whether any one of them has merit—some may turn out to, just as a matter of chance—but whether they are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival. The inquiry in such cases is prospective: Were the legal filings made, not out of a genuine interest in redressing grievances, but as part of a pattern or practice of successive filings undertaken essentially for purposes of harassment?

*USS-POSCO Indus. v. Contra Costa Cty. Bldg. & Constr. Trades Council, AFL-CIO*, 31 F.3d 800, 811 (9th Cir. 1994).

In the Ninth Circuit, it appears that the strict two-part analysis from *Professional Real Estate Investors* does not apply when what is being alleged is a pattern or series of lawsuits. *See USS-POSCO Indus.*, 31 F.3d at 810-11. It is not clear how many lawsuits are required to meet the pleading requirements of a "pattern" such that *Professional Real Estate Investors*'s strict two-part analysis is not applied. *Compare USS-POSCO Indus.,* 31 F.3d at 811 (twenty-nine lawsuits potentially a "pattern"), *with Amarel v. Connell,* 102 F.3d 1494, 1519 (9th Cir.1996), *as amended* (Jan. 15, 1997) ("Although we do not attempt to define here the number of legal proceedings needed to allege a 'series' or 'pattern' of litigation as required in *USS-POSCO Industries*[,]" two lawsuits do not constitute a "pattern" and therefore *Professional Real Estate Investors* applied). In *USS-POSCO,* the Ninth Circuit found that twenty-nine lawsuits constituted a series of lawsuits under *California Motor Transport* but also found that because the record showed that fifteen of these twenty-nine lawsuits were

15

successful, the Plaintiff could not succeed under this sham litigation exception. 31 F.3d 800, 811 ("The fact that more than half of all the actions as to which we know the results turn out to have merit cannot be reconciled with the charge that the unions were filing lawsuits and other actions willy-nilly without regard to success"); *see also Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.,* 552 F.3d 1033, 1046 (9th Cir.2009) (at summary judgment stage finding no sham where defendant "won seven of the seventeen suits" and each of the ten remaining cases "had a plausible argument on which it could have prevailed"); *cf. Waugh Chapel S., LLC v. United Food & Commercial Workers Union Local 27*, 728 F.3d 354, 365 (4th Cir. 2013) ("While there is no particular win-loss percentage that a litigant must achieve to secure the protection of the First Amendment, a one-out-of-fourteen batting average at least suggests a policy of starting legal proceedings without regard to the merits and for the purpose of [violating the law].") (internal quotation marks and citation omitted).

"No court has delimited the number of lawsuits necessary to trigger the prospective test of *California Motor.*" *Livingston Downs Racing Ass'n Inc. v. Jefferson Downs Corp.*, 192 F. Supp. 2d 519, 539 (M.D. La. 2001) (finding that nine lawsuits sufficient to invoke the second situation of sham litigation analysis); *see also ERBE Elektromedizin GMBH v. Canady Technology, LLC,* 629 F.3d 1278, 1291 (Fed. Cir. 2010) ("[T]he three relevant lawsuits ERBE filed to which Canady Technology directs our attention are not 'simultaneous and voluminous' and do not implicate a test for 'a whole series of legal proceedings'"); *Polaris Industries, Inc. v. Arctic Cat, Inc.,* Civil No. 15–4475 (JRT/FLN), 2017 WL 1180426, at *5-7 (D. Minn. 2017) ("Thus, the Court finds that the three relevant [patent] cases that Polaris filed against Arctic Cat do not involve a 'whole series of legal proceedings' necessitating application of the *California Motor* [*Transport* ] and *POSCO* standard").

It does appear that five or six lawsuits is on the lower end of what can constitute a pattern or series of harassing litigation. The Second Circuit has found that *California Motor Transport* sham exception requires "huge volumes of challenges" that are raised simultaneously. *See Primetime 24 Joint Venture v. Nat'l Broad., Co.*, 219 F.3d 92, 101 (2d Cir. 2000); *In re Flonase Antitrust Litig.,* 795 F.

Supp. 2d 300, 309–10 n.10 (E.D. Pa. 2011) ("In order to qualify as a 'pattern or practice' of successive filings, however, the number of petitions must be voluminous. Here, GSK's conduct consists of, at most, five 'petitions' . . . No court has applied the *USS-POSCO* test to a 'series' of five petitions; indeed, courts have expressly declined to apply the test in cases involving up to nine petitions") (citations omitted). In contrast, the Third Circuit in *Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*, found that while four actions will not always qualify for the *USS-POSCO* standard of a pattern of sham litigation, in that case it was sufficiently alleged where a party brought challenges in four different government areas to obstruct another party from obtaining necessary government approvals for a real estate project. 806 F.3d 162, 181 (3d Cir. 2015). However, the allegations in *Hanover 3201 Realty* about the sham litigation were far more detailed and "[i]n addition to [allegations concerning] the lack of objective merit, Hanover Realty alleges indicia of bad faith" with respect to the four alleged sham litigations. *Id.* In comparison, Wonderful's allegations that Defendants filed sham lawsuits without regard to the merits and for the purpose of obtaining PLAs fall short of the pleading standard to defeat *Noerr-Pennington* immunity under the first exception and amount to little more than conclusory allegations. Additionally, while the FAC alleges six sham CEQA petitions, only one is brought against Wonderful and by Local 220. It is not altogether clear whether these six litigations constitute a pattern since Wonderful has not specifically alleged the relation of the plaintiffs in these actions to Local 220, except in a very general and conclusory fashion as the "Union Enterprise."[10]

While establishing the pattern or practice sham exception appears to require less strict pleading requirements than the first situation under *Professional Real Estate Investors,* which involves a single litigation that must be alleged to be objectively baseless, the second test still requires some indication as to the merits of these underlying actions. "Without any information regarding the merits of the

---

[10] Moreover, Wonderful is only involved in the City of Shafter CEQA challenge and seems to have no relation to the other developers in the other CEQA suits such that it is also not clear whether it is being subject to a pattern of harassing behavior as a company. The Court will not further address these issues but will allow Wonderful leave to amend to consider what it can plausibly allege under the variations of the sham litigation exception.

17

lawsuits, this Court cannot determine 'whether the legal filings [were] made, not out [of] a genuine interest in redressing grievances, but as part of a pattern or practice of successive filings undertaken essentially for purposes of harassment.'" *Avery Dennison Corp. v. Acco Brands, Inc.*, No. CV99-1877DT(MCX), 2000 WL 986995, at *22 (C.D. Cal. Feb. 22, 2000) (quoting *USS-Posco Indust.,* 31 F.3d at 811); *Catch Curve, Inc. v. Venali, Inc.*, No. CV05-04820DDPAJWX, 2008 WL 11334024, at *6 (C.D. Cal. Nov. 3, 2008) ("Whether the lawsuits at issue are baseless is a component of the *USS-POSCO* approach. As the *USS-POSCO* court framed the test, the overarching question is whether the defendant's policy was to file lawsuits '*without regard to the merits* and for the purpose of injuring a market rival.'") (quoting *USS-POSCO*, 31 F.3d at 811); *see also Gen-Probe, Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948, 958-59 (S.D. Cal. 1996) (explaining that "under either the [*Professional Real Estate Investors*] or the *USS-POSCO* test, [the plaintiff] ... must demonstrate objective baselessness" because the pattern of claims must be "baseless as a whole").

It is clear that some allegations pertaining to baselessness are necessary to support application of the sham litigation exception for a pattern or series of filing baseless lawsuits. The Court is mindful that it must be critical in reviewing claims to determine whether the sham exception is properly invoked. *See Energy Conservation, Inc. v. Heliodyne, Inc.*, 698 F.2d 386, 389 (9th Cir. 1983) ("Courts may properly be more critical in reviewing complaints which invoke the sham exception to the *Noerr-Pennington* doctrine since the conduct is presumptively protected by the first amendment, involving here the right of access to the court."). "Where a claim involves the right to petition governmental bodies under *Noerr-Pennington* . . . we apply a heightened pleading standard" which requires "that the plaintiffs satisfy more than the usual 12(b)(6) standard" such that "a complaint must include allegations of the specific activities which bring the defendant's conduct into one of the exceptions to *Noerr-Pennington* protection. . . . Conclusory allegations are not sufficient to strip a defendant's activities of *Noerr-Pennington* protection." *Oregon Nat. Res. Council v. Mohla*, 944 F.2d 531, 533, 535 (9th Cir. 1991) (internal quotation marks and citations omitted) (finding that "[e]ven if Avison is correct that the

18

216 administrative appeals constitute a pattern of baseless suits, it fails to allege with specificity how ONRC's lawsuit against it fits into that pattern. The existence of a series of baseless appeals does not in itself bring *this suit* within the sham exception.").

Accordingly, because Wonderful has not sufficiently alleged baselessness of the underlying lawsuit(s), the Court finds that Wonderful has not alleged sufficient facts to defeat *Noerr-Pennington* immunity. The Court thus dismisses the FAC and grants leave to amend for Wonderful to include more specific allegations under the sham litigation exception.

### B. Defendants' Anti-SLAPP Motion

Defendant also moved to strike Plaintiff's state law claims under California's anti-SLAPP statute. ECF Nos. 44-45. California's anti-SLAPP statute was "enacted to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003).

> Specifically, California's anti-SLAPP statute allows a defendant to move to strike a plaintiff's complaint if it "aris[es] from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue." Cal. Civ. Proc. Code § 425.16(b)(1). . . . Motions to strike a state law claim under California's anti-SLAPP statute may be brought in federal court.
> . . .
> A court considering a motion to strike under the anti-SLAPP statute must engage in a two-part inquiry. First, a defendant "must make an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech." *Globetrotter Software,* 63 F.Supp.2d at 1129; *see also Wilcox,* 27 Cal.App.4th at 819–20, 33 Cal.Rptr.2d 446.
> . . .
> Second, once the defendant has made a prima facie showing, "the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims." *Globetrotter Software,* 63 F.Supp.2d at 1129.

*Id.* at 1109-1110.

However, the Ninth Circuit has indicated "granting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment." *Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004). " '[W]hen an anti-SLAPP motion to strike

challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated.' If the claim is not adequately stated in the operative complaint, the district court may defer consideration of the anti-SLAPP motion pending the filing of an amended complaint." *Ramachandran v. City of Los Altos*, 359 F. Supp. 3d 801, 811 (N.D. Cal. 2019) (quoting *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018), *amended*, 897 F.3d 1224 (9th Cir. 2018)) (citation omitted).[11]

Accordingly, the Court defers ruling on Defendants' anti-SLAPP motion until after Plaintiff has had the opportunity to amend its FAC.[12] *See, e.g.*, *Vess*, 317 F.3d at 1110.

## V. CONCLUSION AND ORDER

For the reasons set forth above, Defendants' motion to dismiss, ECF Nos. 25, is GRANTED and Plaintiff is granted leave to file an amended complaint within thirty (30) days.

IT IS SO ORDERED.

Dated: **January 7, 2020**        /s/ Lawrence J. O'Neill
                                  UNITED STATES DISTRICT JUDGE

---

[11] While Defendants submit that their motion to strike challenges both the legal sufficiency and the factual sufficiency of the FAC, ECF No. 49 at 3, 6-9, the latter challenge is premature. *See id.* at 811 (motions to strike challenging the factual sufficiency of a claim are evaluated under Federal Rule of Civil Procedure 56 standard and "[i]n such a case, discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court.") (internal citation omitted).

[12] The Court notes that Plaintiff's argument concerning the motion to strike as untimely for being filed 64 days after the FAC was filed is not well received. ECF No. 47 at 9-10. The Ninth Circuit has specifically held that the 60-day time frame in section 425.16(f) does not apply in federal court. *Sarver v. Chartier*, 813 F.3d 891, 900 (9th Cir. 2016) ("We therefore decline to apply the statute's 60-day time frame in federal court, and we refer instead to our own rules of procedure.").

20